Opinion by
White, P. J.

(Transferred from Austin. J

§ 328. Carriers; liability of, for loss, etc., on a connecting line; case stated. Appellant gave appellee a through bill of lading and received through freight upon three hundred and eighty-two head of sheep shipped by him over its road and connecting lines from Cisco, Texas, to Chicago, Illinois. A special contract of shipment was signed by the parties. Appellee was required to, and did, furnish double decks to be used in two cars in which his sheep were shipped, and he was to accompany the sheep to Chicago and have a free pass back over appellant’s road. By the contract of shipment appellant bound itself to carry the sheep over its own line of road, “from Cisco to its freight station at Texarkana, ready to be delivered to the consignee or his order, or to such company or carrier, if the same is to be forwarded beyond said station, whose line may be considered a part of the route of destination of said stock, at the rate of $138.50 per car-load from Cisco to Chicago, the same being a special rate,” etc. It was further stipulated “'that incase the live stock mentioned herein is to be transported over the line or lines of any other railroad or steamboat company, the party of the first part (the railroad company) shall be released from liability of every kind after said live stock shall have left its road, and the party of the second part (appellee) so expressly stipulates and agrees; the uuder *285 standing of both parties hereto being, that the party of the first part shall not be held, or deemed liable for anything beyond the line of the Texas & Pacific Bailway Company excepting to protect the through rate of freight herein.” Another stipulation was, that “as a condition precedent to his (appellee’s) right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of the company, or its nearest station agent, before said stock is removed from the place of destination above mentioned, or from the place of the delivery of the same to said party of the second part, and before said stock is mingled with other stock.”
Appellee, in his testimony, says that he did not read or know what this contract contained at the time he signed it. Under this contract, the sheep in question were safely carried without delay, loss, injury or damage as far upon the route as St. Louis, Mo. At St. Louis the sheep were unloaded for one day and a half. Appellee testified that he tried to get them forwarded, “but the agents or men of the road over which shipment had been made from Texarkana refused to ship him further, and took the cars in which were his double decks, and he never saw them any more, and was finally compelled to procure the shipment of his sheep over another and different line of railroad, making with this latter road a new contract of shipment.” This suit was brought by appellee against' appellant .to recover damages caused by delay at St. Louis in the forwarding of his sheep; for the wrongful taking and conversion of his “double decks;” for extra freight, extra expenses, loss of time, etc.,—the aggregate amount of damages claimed being $995. He recovered judgment for $425 and costs. It is claimed by appellant that it was in no manner liable for any of the damages claimed, because, by the special contract executed by the parties before the shipment, in express terms it limited its liability to its own line of road, except as to the protection of the through rate of freight; that its *286 line terminated at Texarkana, and the damages claimed accrued, if at all, after the freight reached St. Louis and on a connecting line. This position is not maintainable under the rules of law, as they now appear to be well settled. By the contract the sheep were to be shipped to Chicago, and a through bill of lading was given and through freights charged to that point. These conditions were controlling elements in the contract, and having agreed to and stipulated for these, appellant could not limit its liability against damages on its connecting lines. The rule is well stated and authorities collated in the re- . cent decision of this court in the case of The Texas Express Co. v. J. W. Dupree et al. [ante, § 318]. It is there said: “Where a carrier contracts to carry goods not only over his own route, hut over connecting lines, he cannot contract that his responsibility may terminate at the end of his own line. He will still be held responsible for the negligence not only of himself and his servants, but of the connecting lines, they being considered his agents for carrying out the particular contract. A common carrier, by special contract, may enlarge, but cannot limit, his common law liability. By the common law he is liable for goods lost or destroyed while in his care, unless such loss' or destruction was occasioned by the act of God, the public enemy, or the fault of the owner.”
§ 329. Evidence; res inter alios acta, not admissible.Over objections of appellant, the court admitted in evidence, on the trial, a statement in writing of Gregory, Cooley & Co., commission merchants of Chicago, as to expenses, and what appellee received for the sheep; also the receipt to appellee from said commission merchants for the freight paid by appellee to them as extra expenses; also the_ contract entered into between appellee and the other railroad company at St. Louis. Held: Appellant was not a party to any of these transactions, and the writings concerning them were res inter alios acta, and in no way binding upon appellant, and were *287 inadmissible as evidence against it. If the facts about which the writings were given were pertinent, then, so far as appellant was concerned, they could only have been proven, on objection made, by the best evidence, which would have been the direct testimony of some party conversant with the facts. [1 Greenl. Ev. § 82.]
§ 330. Notice in writing of damages; stipulation for, in carrier’s contract. By the terms of the contract, appellee expressly stipulated, as a condition precedent to his right to recover damages on a breach of the contract by appellant, that he would give notice in writing of his claim for damages to some officer of appellant, or to its nearest station agent, before the sheep were unloaded and mingled with other stock. This notice was not given. Held: Such stipulation is a reasonable and valid one, and binding upon appellee. [W. & W. Con. Rep. §§ 374, 1257; 2 Oon. Rep. §§ 136, 137.] This notice must have been given, or the owner has no right of action, he having made it a condition precedent to his right to an action.
§ 331. Party executing written contract, or receiving same, cannot be heard to plead that he did not know its contents, etc. Appellee cannot be heard to say that he accepted, signed and executed the contract of shipment without reading it or knowing its stipulations. “When the owner of goods accepts a receipt, he is conclusively presumed, in the absence of fraud and imposition, to have assented to all the terms and conditions contained in it, which amounts to a contract with the carrier, and, whether called a special or express contract, or a special acceptance, becomes at once binding upon both parties.” [Hutchinson on Carriers, § 241.] In McMillan v. R. R. Co. 16 Mich. 112, this subject is considerably discussed by Cooley, J., in favor of the position that, if the consignor of goods receive a bill of lading or receipt from the carrier containing limitations of the latter’s liability, without making any objection thereto, and has not been misled or imposed upon, he cannot deprive the carrier of *288 the benefit of such limitations by showing that he took the bill of lading or receipt without reading it, and without being aware that it contained them; but that, in the absence of fraud, the terms of the writing will be conclusive. And this seems to be the recognized rule everywhere, except in Illinois and Ohio.
October 18, 1884.
Reversed and remanded.